May it please the court, Catherine Tassinari for the plaintiff, you did pronounce it correctly I believe, Spelatz. I'm representing Roberta Spelatz who suffers from fibromyalgia, degenerative disc disease, and depression and personality disorders. This is an unusual case in that the ALJ had two opportunities to weigh the plaintiff's, the mental, the evidence of plaintiff's mental disorders. And in both cases did not do so properly. In the first case he had found she suffered from depression and had moderate social functioning limitations. And the appeals council sent it back to the ALJ because he had failed to include any mental impairment limitations in the residual functional capacity. But when it came back for a remand, after a remand hearing, the ALJ decided that or stated that his finding that she suffered from a mental impairment in his first decision was a technical writing error and he found that she did not suffer from a severe impairment and had only very mild limitations. Consequently he never did get to step four on that point. But in deciding that he did not address the psychologist's opinion or the therapist's opinion. And the problem with the case is if he had, let's say he had when he went back on remand said okay I'm looking at the psychologist's opinion, I'm looking at the therapist's opinion and I'm noticing her comments that the plaintiff is emotionally fragile and is labile and cries a lot. And I've noticed the psychologist's comments that she should have treatment for severe depression. If we had a case where he had weighed all of that evidence and he had looked at the state agency decision and said I am now concluding she has only mild limitations, this would be a different case. But he didn't do that. What he did was he stated that he was adopting the state agency psychologist's conclusions and they have not examined the plaintiff. And he found that those opinions were consistent with the psychologist, the examining psychologist. So he wrote his decision assuming that they were compatible decisions. Since then, and we appealed, the commissioner, both the commissioner and district court, have gone to some length to show how the state agency opinions do not agree and are in fact inconsistent with the psychologist's report. And the state agency psychologists themselves said that they were not giving controlling weight to the psychologist and they took issue with her GAF assessment of 55. So the problem is that we've never had a situation where the ALJ, who is the one who is to make this decision, did not actually weigh things properly. He assumed they were the same. The state agency says we're not adopting her. And now we're only hearing from the commissioner and from district court that Dr. Bickel's opinion and the state agency opinions are all consistent. So we're submitting that the ALJ was on the right track in his first decision when he found that she had moderate social functioning limitations. The problem is that those limitations and the comments and observations of the mental health examiners are not consistent with his finding that she retains the ability to work as a receptionist. We don't have psychological, we don't have, excuse me, that question was never offered to the vocational expert. There were no psychological limitations ever propounded to the vocational expert. But I would submit it's just obvious that a person who is fragile and crying cannot be working as a receptionist. I think it also raises issues of ability to respond properly to supervision and some other things that weren't addressed by the court. I'd also don't want to forget the, we do have the treating doctor support in this case. And this is a case where we have a combination of medical problems. And when, and Dr. Shepard Gerdes was really clear when he was writing his, he wrote two letters on this. And in his second letter he was writing to explain clarification, giving clarification to the ALJ. And he said that it's not just one problem that she has, but a combination of problems that makes it difficult for the 60-year-old, well now she's 65, but at the time of the first hearing I believe she was 60 years old, difficult for her to work. And the court really did not address some pieces of his opinion. And the biggest thing really, yes she had neck surgery and that did improve to a large extent, but she has been suffering with fibromyalgia. The ALJ accepts that as a severe impairment. And what Dr. Shepard Gerdes said is that because of that she suffers from fatigue, lack of stamina, and lack of concentration. And the fatigue and lack of stamina were never really addressed in any way by the ALJ as to why he was disregarding that opinion by the treating doctor. Did you want to save some time for the rest? I'll save the remaining time, thank you. All right, Ms. Miller. Good morning, Your Honors. Catherine Miller on behalf of the Commissioner of Social Security. It seems that counsel's arguments focus on the adequacy of the ALJ's findings in this case, and particularly with regard to Step 2. She contends that the ALJ did not consider Dr. Buechel's evaluation in the second decision or the therapist's findings, but the ALJ specifically incorporated by reference the prior decision, which has a very extensive discussion of Dr. Buechel's findings and summarizes those findings, addresses the GAF score, equates it with symptomology. In addition, the ALJ also comments in that first decision that she did not express an opinion of disability. That's significant because I think what the ALJ is really saying is Dr. Buechel never made a functional assessment at all. The ALJ also, and this is at 344 through 349 in the first decision, the ALJ also says there that the therapist, even though she describes Ms. Spillatz as emotionally fragile and having these minimal skills, doesn't connect it to any kind of functional assessment. And again, the ALJ says, did not express an opinion of disability. So what we're left with is... Michael, didn't she rate her with a 5 rating? Dr. Buechel did, yes. And she said she had an impression of her. Yes. What does that equate to? Pardon me, could you repeat? What does that equate to? Disability? No. First of all, in the first decision, the ALJ explicitly addressed the GAF score at 349 and said that he equated that with symptomology. Now GAF is, as you know, the single measure that... In this case, Dr. Buechel never said whether that moderate score was related to functional limitations or symptomology, but based on her essentially normal mental status examination findings, except for some remote memory spottiness, one can reasonably infer that she equated that GAF score to symptomology, not functioning. So essentially what we're left with here is Dr. Buechel and the therapist never made a functional assessment. So in essence, there's really no contradictions between the non-examining physician opinions and Dr. Buechel and the therapist because they never made a functional assessment. The two state agency physicians also, their functional assessments were in existence at the time of the first ALJ decision, and at that time they assessed mild in every category. Under our regulations, findings of mild limitations generally equates to a finding of non-severity under Step 2. I don't know if this Court has any problem with the ALJ's candor about the technical writing error that occurred in this case, but it's a very plausible explanation for what happened. If you look at the first decision, nobody has, there's no one, not Dr. Buechel, not the therapist, not the state agency physicians, no one assessed moderate limitations. All we had in the record were mild limitations from the non-examining physicians. And I'd just like to touch on the treating doctor opinion analysis, and appellant's counsel has made much of the fact that these opinions really don't conflict, and irrespective of whether this Court finds there's a conflict, the ALJ provided clear and convincing reasons for giving less weight to Dr. Shepherd-Gerdes' opinion. It's well established that contradictions between a doctor's opinion... What were the contradictions? What were the contradictions? Well, the ALJ noted that Dr. Shepherd-Gerdes' opinion of disability was inconsistent with his treating notes showing consistently mild examination findings. In March 2004, one month before his disability letter, Ms. Spallatz, and that's at ER 220, had intact reflexes, intact strength. Her MRI in 2002 that Dr. Shepherd-Gerdes took had remained unchanged for over 10 years. In addition, with regard to her neck, we know she had a successful cervical surgery, and she told Dr. Kuyper, the neurologist, my symptoms have completely resolved, and he says to her, we'll follow up as needed. She doesn't ever follow up. Instead, she goes back to Dr. Shepherd-Gerdes and says, oh, I'm having headaches in March 2003. He says, you stopped taking hypertensive medication on your own. Maybe you should take that again. She doesn't return for another year and says, oh, I'm having a headache, and he says it's due to coughing. Anyway, another... The conflict with Kuyper. I'm sorry? What is the conflict with Kuyper? Well, the conflict, if he reviewed, his examination reviewed Ms. Spilatz's low back condition, her cervical condition, and her fibromyalgia. He considered all of those factors, and, in fact, his examination is the most extensive in the record, and so that would be the conflict. But how did Shepherd-Gerdes, Kuyper, how does his opinion work with Kuyper? Well, with Kuyper, he says that he does not see that Ms. Spilatz is disabled at all, even prior to her cervical surgery. So the difference is that Shepherd-Gerdes thought that before the surgery she might have had a disability, whereas Kuyper said she never did. Is that the difference between them? Well, it seems to me the difference is that Dr. Shepherd-Gerdes believes that Ms. Spilatz is disabled even after her surgery, her successful surgery. And Kuyper says no. Even prior to her getting this very successful cervical surgery, she is not disabled. He felt that surgery would alleviate her condition. He thought that her very extensive physical examination showed really no limitations in functioning at all. And the ALJ also noted that Dr. Shepherd-Gerdes' opinion was very vague and generalized, although he mentioned that individuals with fibromyalgia need to pace themselves. He never said, you know, Ms. Spilatz needs to do that. And he also said she should have light exertion. Can I ask you a question with regard to MD? I understand that ALJ found that fibromyalgia was there. Yes. Therefore, her pain aspect was legitimate. Doesn't it then provide substance to the claim that she has a pain aspect? Why he rejects that? Well, he did find that she met the de minimis standard at Step 2 for her fibromyalgia. Now, with regard to the level of her pain, he didn't believe that she was disabled by that pain. How did he? What reasons did he give as to protecting her testimony? Well, I can't quite remember where I saw this in the record. It may be in the first decision. But he did say that Dr. Shepherd-Gerdes' opinion that she had multiple trigger points was not supported by the longitudinal record. So really she had not been treated. Well, we have to go back to the first. Unfortunately, we do have a, because of the procedural posture of this case and the need for clarification, we do have these two opinions. It's a bit unwieldy, but I think the ALJ made every effort to develop the record, complete the record in this case. And just one last point. Just note that the ALJ reasonably preferred the non-examining physician's opinion. It was consistent with the evidence. The mild lumbar findings, the resolved headaches, lay testimony that were consistent with light exertion. If this Court has no further questions. I don't believe that we do. Thank you. And you have some rebuttal time remaining. It's true that the ALJ in the first decision did recount the therapist, kind of a summary of the therapist's mental status report, and he also recounted Dr. Bickel's, the psychologist's report. But he didn't really, you know, do any serious weighing or rejecting at that point, because at that point he was finding she had a severe mental impairment. In the second decision, he doesn't revisit that. So I'm not seeing that there's support in that first decision that would explain his finding in the second decision that there was no mental impairment. I mean, I don't think it was just clearly a typographical error. And I've briefed that thoroughly, so maybe, you know, maybe you won't agree, but I just don't think that first ALJ decision will support the commissioner's position. The thing is, this business about the GAF, the commissioner argues that there are no functional limitations that were assessed, either by Dr. Bickel or by the therapist. But Dr. Bickel did assign this GAF of 55, which is considered compatible with moderate functioning in kind of an overall functioning. And what I think is important is to look at how the state agency dealt with that GAF assessment, which is at 287 in the transcript, because they disagree with her. They don't say, oh, that doesn't mean anything. They think it does mean something, and they disagree with it. But that's a different question entirely than saying that the GAF assessment is meaningless. I think Dr. Bickel, by her GAF assessment and other comments that she made, she didn't specifically complete a functional capacity report, but she did raise points about limitations that the plaintiff would find in the workplace. And finally, just one point on Dr. Kuyper. The neurologist did not treat the plaintiff for fibromyalgia or depression, and his opinion that she was not disabled prior to her cervical surgery does not conflict with Dr. Shepherd-Gerdes, who is considering the whole person. Thank you, counsel. Thank you. We appreciate the arguments that both of you have brought to us today. The case just argued is submitted. Next, we will hear Mercer v. Astru.
judges: Graber, Fisher, Smith